All right, we're prepared to hear arguments in the final case for today, Coffman v. Nexstar. We'll hear from Appellate's counsel, Mr. Atkinson. Thank you, Your Honor. May it please the court, I'm Mark Atkinson, I represent the plaintiff below, Ms. Coffman. There's one point of law that is substantial and controls this case that everyone agrees upon. Plaintiff's counsel, defense counsel below, the district court in its order, Fourth Circuit, in its opinion, and that is that at a summary judgment stage, all facts are to be interpreted in the light most favorable to the plaintiff, or the non moving party in this instance was the plaintiff, and even inferences that can be taken from those facts are to be interpreted in the light most favorable to the plaintiff. The standard of review here is de novo, and this court has that same standard before it. We have presented seven different factual issues where the court did not follow that standard, and in fact, we suggest he did the opposite, that he strained to come up with arguments in favor of the defendant. If just one of those factual issues this court determines in our favor... What do you think is your primary factual dispute that the district court improperly considered in your view? Yes. We think the most important one is that the court ruled that Ms. Coffman's request to work remotely a second time after she had worked remotely two or three months earlier was not a reasonable accommodation, and we think the court erred for two reasons. Number one, that's a factual issue. It's not for a trial court to make that determination. Number two, if you get past that and you're interpreting these facts in the light most favorable to the plaintiff, she had just worked remotely two or three months earlier. She had worked remotely from a hospital bed two or three months earlier. Appellee alleges that she didn't meet her sales goals when she was working remotely. Well, that was not... She clearly met her goals in her testimony. She felt that she did, as I recall. So perhaps in your view, that's another factual dispute. It is a factual dispute, we believe. Thank you, Your Honor. That's one issue. A second issue is that the district court erred in concluding that Nexstar did engage in the interactive process. When a reasonable accommodation is asked for, the law is clear that the employer has to engage in an interactive process about that reasonable accommodation. And what's clear in this case is Nexstar didn't say a word about that. They did. They did talk about other issues with her, but they never discussed... They let her work remotely. She used her family medical leave act. She used short term disability. They were working with her, and then the last communication from her really indicated she wasn't coming back, because she has all these issues. She had another surgery planned that would be four to six weeks, and then another tentative surgery in October. There's no indication that she says she plans to come back in that last August communication. No, we disagree with that, Your Honor. She had worked remotely. Two months after her surgery, when her ureter was cut, she asked again to work remotely. There's not one word of interaction by the defendant about working remotely. All they were interested in was her coming back full time. She had a nephrostomy tube in her back, and she could not drive, but she easily could have worked remotely again. And the communication the court's referring to is her August 4th, 22 letter. She said, I'm scheduled to have a surgery on August the 8th, and she puts in that email that she may be able to come back in September or October. So we don't think that is an unreasonable response that she gave to that point. She felt her job was being threatened at that point. And even if the court wants to take that August 4th letter as an issue of fact, it's one issue of fact of all kinds of issues of fact that a jury should have considered. A third issue of fact, the district court ruled that driving was an essential function of her job. We think that's clear error for two reasons. Number one, it's not up to the trial judge at summary judgment stage to determine what's a crucial, critical issue of fact or essential function of the job. We cited the case law for that. Number two, if you are going to say, if you get past that and you say it is the judge's job to determine that, how can it be unreasonable for her to work remotely when she had just done it two months earlier? When is it that appellant intended to return to work? She went to her doctor. She was going to have surgery on the 8th of August, and she said, in September or October, I should be able to come back. As in any case, your honor, she has to talk to her doctor and release her. She was actually released in September fully to go back to work. She could have worked remotely months before that. Let me ask you two questions. One, when did Kaufman exhaust her job to protect her to leave? I'm sorry? When did she exhaust... You got the question. When did Kaufman exhaust her job to protect her to leave? Well, there are two issues there, your honor, and those are other factual issues that we think should have been decided by the court. She was on a disability leave when she was fired. She was fired on August the 19th. She was on protected leave for disability leave until August 24th. She was then eligible for paid parental leave starting  August 24th, five days later. So to answer your question, she had not exhausted her leave that was available to her. She was fired before that was exhausted. Is disability leave protected leave? Well, it's a factual issue that a court could consider or a jury could consider. Consider what? Whether it is protected leave? Is either... Either disability leave is protected leave or not, is it? I think the only answer I can give to the court on that is it is evidence that the employer has an illegal motive to fire someone while they're on protected leave. And in this case... When you use the term protected leave, I don't know... I don't know of anything to establish that disability leave is protected leave. Well, we think it's... I don't know of any case that uses those words, Your Honor. But if you're on disability leave and the employer says, as they've said in this case and is in the record, we normally don't fire people on disability leave. My second question would be, are indefinite accommodations reasonable? Yes. The accommodation she asked for was to... Indefinite. Oh, no. No, it's not. And we don't think it was indefinite in this case. She told him on August 4th, I'm having surgery on the 8th and it looks like I will be released in September or October and she was actually released in September. Didn't she also say she had another tentative surgery in October? Tentative. And she did not have that. And basically, that was to remove the nephrostomy too. But that's what she told the employer? She did. She did. But she was under... It has to be a reasonable time and we think and we submit, particularly if this court is viewing things in the light most favorable to the plaintiff, for her to say in August, I should be able to come back in September or October, that's reasonable. Where did she say that? In the email? Yes. The email of August 4th. Should be able to come back in September or October. Well, she's talking about how long she'll be out and we think that's the same thing. Do you mean where she says requiring a recovery time of four to six weeks as well as another tentative surgery in October? Yeah. And I think below that, she talks about... If I remember correctly, she talks about September or October. But she's got surgery in October. She may have surgery in October. She has surgery on August the 8th. She said there may be another surgery and there was not. Yeah, but the employer didn't know. That's correct. There was not gonna be another surgery. That's correct. What the employer knew was that she said she has a tentative surgery in October. That's right. Which would be additional time, even time beyond that. That's right. That's right. We agree with that. But we think that's a reasonable time, particularly if you interpret the facts in the light most favorable to the plaintiff. Another error that we feel the district court made was he... And I'm gonna quote from the order. He says, in as much as Ms. Kaufman's August the 4th 22 email failed to provide Nexstar with a definitive date upon which she could reasonably be expected to return, that is not a reasonable accommodation. There's no court in the land that says she has to provide a definitive date. I think you I don't think she was asking for six months under these records. Would six months be reasonable? Six months from when, Your Honor? When for her to be out. The time period you're saying, we said is not indefinite. Would a time period of six months be reasonable? Well, she asked on August the 4th, or she responded to them, here's what my medical condition is. And there's nowhere in there that that's gonna be six months. So we don't think six months. She's already been out six months. She had, she had. In fact, they gave an additional 12 weeks. That's correct. That's correct. But as of August 4th, they were communicating to her about when can you come back. They weren't firing her. If six months was the rule, they would have fired her before that. They're not doing that. They're looking at, in August, when can she come back? And she answered that as best she could. As in any person who's on disability, I have to go to the doctor, and then the doctor will see me, and then I can respond. But she gave them an indication that she thought by October at the latest, she would be able to return. I've already mentioned... And in that same, where she does say October, then it says she will have a urethral catheter, which prevents me from lifting and driving. And that's right after she says... Yeah, no, it says from August 8th to October, I'll have this catheter. It prevents me from lifting and driving. Right. There's nothing in there that talks about anything beyond October. That's our point. And we think a month or two is reasonable time. We've already talked about, they fired her while she was receiving disability benefits, even though they said they normally don't do that. They fired her five days before she was eligible to receive paid parental leave. And the lawyer that fired her, the in house lawyer that fired her, testified that that five day difference, firing her five days before she could get on leave, was just a coincidence. And we think a jury could easily infer that that was not a coincidence, that they wanted to fire her before she got on that leave. But in any event, that's a jury question. The district court erred in finding that when her boss said, we quote, we are not trying to keep, or we are trying to keep you off FMLA, that that's not indicative of an illegal motive. If you interpret the facts in her favor, words are clear. We don't want you on FMLA. She got on FMLA and she was fired. For all those reasons, that's seven that we listed. If any one of those, this court feels if you interpret the facts in the light most favorable to the plaintiff, the judge overstepped his bounds, he should be reversed. In this case, she should go forward, she should have her day in court. And just one final point. We're arguing about, is this reasonable or is that reasonable? And the real answer is, these are jury questions. If we're arguing about the facts, it's a jury question. And for those reasons, we ask that this order be reversed. Thank you. Thank you, Mr. Eckes. And we'll hear from Mr. Muntz. Thank you, Your Honors. Good morning. May it please the court. My name is Andrew Muntz and I represent Appellee Nextar Media in this case. As we just heard from Mr. Atkinson, Appellant's appeal is based on contentions that the District Court aired by warning Nextar's summary judgment on all of Appellant's claims. However, as Nextar notes in its brief, Appellant fails to cite any actual Fourth Circuit cases that the District Court failed to follow. This is because the District Court followed Fourth Circuit case law, which supports its conclusions in this case. Appellant's primary argument, as we just heard from Mr. Atkinson, is that the District Court did not interpret the facts in the light most favorable to Appellant when assessing the summary judgment motion. However, this is simply not true. The District Court clearly acknowledged the standard when assessing the summary judgment and in awarding summary judgment to Nextar. The standard does not require the court to ignore facts, take facts out of context, or draw on reasonable conclusions from the facts. This court has been very clear. Permissible inferences must still be within the range of reasonable probability. And it is... So what exactly must an employee show to prove that they will not be out indefinitely? Well, I think, Your Honor, the first thing that they need to do is show some time frame when they expect to be able to return. And we just talked about the August 4th email that Ms. Kaufman sent to Nextar. It's JA184. And looking at it verbatim, there's no indication in that email that she is expected to return at any point. There's a whole series of medical procedures that she lays out that she's going to have, including a surgery that she says may occur in October, and no return date, no expected return date at any point in that email. And bear in mind, as the court noted during Mr. Atkinson's argument, at this point, appellant had been out on leave for six months. And to answer Judge Floyd's question, her job protected leave ended May 18th, 2022. That was when her FMLA ended. She was on a short term disability insurance policy after that. But the record is clear, and testimony from Nextar's counsel was clear, that that is not job protected leave. That is an insurance policy that gives employees income, or former employees, if they were injured, if they have an injury that qualifies under the policy. What does it mean to have job protected leave as opposed to insurance policy type? I mean, Your Honor, I take it, and I think the courts have taken it as, it means that you have some legal entitlement to return to your job at the end of that leave. That's what FMLA allows someone to do for three months. And she was given that for three months, and then three additional months, she was allowed to still remain out of her job. So once an employer goes through, provides all of the required leave, the FMLA, the disability protective type things, if there is such a thing. Once that occurs, at the place that she is now, was she in an at-will status? Well, yes. I mean, I think she's an at-will employee under any circumstance, but I think as far as the leave situation, how, from a leave standpoint and from a legal standpoint with respects to FMLA, is employees have a protected period of time where they can be out of work, and then at the end of that period, they have a legal entitlement to be able to return to work if they can. And that's three months. That ended for her on May 18th. And then employers, either as an accommodation or just through the goodness of their own heart, can allow someone to remain out. And that's not required by any law other than maybe as an accommodation under the ADA or the West Virginia Human Rights Act in this case. But it's not a requirement that the law says, for a certain period of time, that person must be able to return to work, like the FMLA does. So the question is whether a reasonable accommodation existed at the time she was fired? Yes, that is what the district court... Who bears that burden? It's plaintiff's burden to show a prima facie case for her disability claims that she requested a reasonable accommodation and was a qualified individual with a disability. She could not do the essential functions of her job. That is... I know Mr. Atkinson disputes that, but it's really not in dispute. No one says... No one disputes that driving was part of the job and a requirement of a part of the job. And generating new business was a critical part of the job, if not the most critical part of not only this job, but Nexstar, who's a... It owns television stations and sells ad revenue to make money. That's the bread and butter of their business, more or less. So generating new business and driving out into the field and meeting with individuals is a critical part of the job. And this is Beckley, West Virginia, where she was located. She's not in New York City, where she could get from place to place without driving. She needed a car. She needed to be able to drive to places. She needed to be able to meet with clients and potential clients to make sure that they're advertising with the station, to make sure that they're happy with the station's services. No one really disputes that, including Ms. Kaufman in her own deposition testimony disputed that being able to drive, going out, meeting, generating new business was a critical, essential part of the job. And just regarding the essential functions, just another point with respect to that. Mr. Atkinson and plaintiff discuss that she was put on... She was allowed to work remotely for a two month period in late 2021, early 2022. We do not dispute that. She was allowed to do that, but that does not mean that those no longer became essential functions of her job. An employer can tell someone you can temporarily not do essential functions of your job, but that doesn't erase the fact that they are essential functions. Even the Equal Employment Opportunity Commission, in its own guidance, makes that very clear. And that is something that was common during COVID, where employees maybe were allowed to work remotely for a period of time, maybe certain duties were excused, maybe certain things that they normally would have to do that were critical parts of the job that the employer just had to bear that they couldn't be done at that time. But that didn't mean they weren't essential. And regarding her allegedly asking her, her manager, about being able to work remotely around the April, May timeframe, assuming that was true, what is articulated in our brief, the intervening events, and as shown in JA104, Ms. Kaufman's own email, there were several intervening events at that time. She had multiple surgeries and potential surgeries after she allegedly told her manager that she would like to try to work remotely. As of August 4th, which is after this email was sent, when NXSTAR determined it needed to separate her, there's no indication that she could or would work remotely. There's nothing in this email that indicates that. And this email was in response to an email from NXSTAR's counsel about Ms. Kaufman's ability to return to work. So NXSTAR, when it made the determination, had no indication she could work remotely, and any ability to work remotely. And even if she could, as we note in our brief, that would not have allowed her to do the essential functions of her job, while her manager testified that for a couple months in that late... In that December, January time period, he could excuse her to not go generate new business. At that time, she had business that she had built up earlier in the year. That period's a little bit of a slow period, as far as business generation, with the holidays and things like that. But that didn't mean someone could do the job on a longer term basis or at a different period of time in the year, without being able to go out in the field and generate new business and meet with clients and potential clients. Regarding the arguments with NXSTAR's paid parental leave policies, the District Court quotes a rather long portion of the transcript of NXSTAR's counsel explaining exactly what that paid parental leave is. And when it comes down to it, it is not, once again, a job protected leave or a benefit that gives someone the ability to stay out longer than they otherwise would have. As is explained by the District Court in its decision grading summary judgment, this is essentially a way to pay someone who's either on maternity leave or paternity leave. It's a six month... Excuse me, not six months, six week paid period. So typically, as was explained, if someone has a... Gives birth, maybe they're on... Able to get paid through short term disability for the first five or six weeks after they gave birth because they're unable to physically work at that time. They could stay home with their baby for an additional six weeks and the paid parental leave gives them the opportunity to get paid for that. It is a fringe benefit offered to employees. It is not a, once again, a job protected leave or a way to stay out on leave for an additional time when someone has been out for six months, as was the case here. It is largely a red herring that is not related to any sort of leave that Ms. Kaufman could have gotten to allow her to remain out of work and not doing her job. As I noted with the short term disability, it's an insurance policy, it's not paid protected leave. Nextdoor did not deviate from any policies in terminating Ms. Kaufman while she was on short term disability. Even the statement that appellant points to by Al Sowerbrae does not on its face indicate that there was any policy that you couldn't terminate someone when they were on short term disability. I believe he says in most circumstances, he wouldn't terminate someone while they're on disability. But Ms. Kaufman doesn't point to any policy or any thing that protects someone and says you cannot be fired while receiving benefits under this insurance policy. In fact, to receive benefits on the insurance policy, the person largely has to say they cannot work, they are unable to work at that time. So it is not a situation where it is impossible for someone to lose their job if they cannot do their job and there's no period where they indicate that they can come back anytime soon if they're just... By the chance they happen to be receiving short term disability benefits at that time. And with interactive process, as the court noted with Mr. Atkinson, there was lots of communication with Ms. Kaufman about her situation, about her being on leave, about her need to take leave. She's the one who broke off communications and basically talked to my lawyer and that was in late June. Whether there was a deficiency in the interactive process because she didn't hear someone, back from someone specifically, about the remote work request that she allegedly made. That is not an issue that would get her the ability to win a disability discrimination case. As this court has said, the amount of interactive process that's needed is a case by case situation. It's not an ends into itself, there's not a claim specifically that you didn't do an interactive process. It is what the employer needs to do to gain the information they need. As I said, she couldn't... Remote work, she couldn't do her essential functions of her job and her employer was multiple times communicating with her about her leave and her need to be out, as is evident. Let me ask Judge Floyd, do you have any additional questions? Yes, sir. Just a second. No. Judge Floyd, I think we understand your argument. Thank you, Your Honor. I do hear a puddle from the staff. Thank you, Your Honor. Mr. Mons says that driving was an essential function of the job. It wasn't an essential function of her job from November till her twins were born on February 23rd. It was fine for her to work remotely. It wasn't an essential function of the job. But that was the time period when she wasn't meeting her sales goals. That's their allegation. Correct. It wasn't an essential function of the job when other members of the sales force could work remotely. So to claim it's an essential function of the job, we think doesn't meet the facts. Furthermore, the law's clear that that's not for a judge to decide. These are jury arguments. A judge is not supposed to determine what the job are. That's a factual determination by definition. And for that reason alone, it should be reversed. Mr. Mons says that the plaintiff allegedly asked for reasonable accommodation. The facts that this court has to take in the light most favorable to the plaintiff, it's clear that she testified that she did ask for that. And they never responded to her about working remotely the second time ever. They did respond to her about her medical issues. Who bears the burden of determining whether reasonable accommodations exist? Who carries that burden? The burden begins with the plaintiff. So the plaintiff, from a summary judge's perspective, at least the complaint would have to establish as a law that you have met that burden. Yes. Yes, Your Honor. And we believe that is easily done by she worked remotely. She asked to work remotely again. And then all these issues are factual issues that have to go to a jury. That's the crux of our argument today. Over and over and over. Mr. Mons understandably doesn't talk about any legal issues. He's arguing the facts. This is a summary judgment case, and we believe summary judgment is only appropriate where there are no factual issues. Well, all that this court has heard all day on this case is the factual issues. For that reason, this order should be reversed. Thank you. All right. Thank you, Mr. Thank you, Mr. Munch. The court will come down and brief counsel, and then we will recess until tomorrow morning. Court reconstitute.
judges: James Andrew Wynn, Stephanie D. Thacker, Henry F. Floyd